UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLE ULRICH, PAUL AIELLO,
ANGELA BAILEY, DALE BLAND,
JACOB BRELLENTHIN, BRITNEY                     Case Number 24-11007
BRELLENTHIN, DANIEL DAVIS,                     Honorable David M. Lawson
LYNN DAVIS, DUANE EGGE,
PAUL NORTHUP, RYAN VOLMERT,
KENNETH JAMES WILKINSON
and SEAN JOSEPH ZIMMETT,

                         Plaintiffs,

v.

GENERAL MOTORS, LLC,

                         Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

The plaintiffs in this case allege that they purchased vehicles manufactured by defendant General Motors LLC that are defective because the automatic transmissions frequently will "slip, buck, kick, jerk and harshly engage." This case was filed as a companion matter to 19-11044 *Speerly v. General Motors, LLC* (E.D. Mich.), which is pending on interlocutory appeal in the court of appeals. The defendant has moved to dismiss the complaint in this matter. Although some of the counts of that pleading fail to state viable claims, many of the counts survive and warrant further examination. The Court will grant the motion in part and deny it in part.

I.

The facts of the case are familiar by now to the parties and were discussed at length in the Court's prior opinions on the defendant's pleading challenges to the amended class action complaint in the companion case, *Francis v. General Motors, LLC*, 504 F. Supp. 3d 659, 667 (E.D. Mich. 2020), and the motions challenging the expert witnesses, *Won v. General Motors, LLC*, No.

19-11044, 2022 WL 3010886, at *1 (E.D. Mich. July 28, 2022).  The plaintiffs allege that the automatic transmissions in their vehicles will "slip, buck, kick, jerk and harshly engage."  They say that, when the transmission causes the vehicle to perform erratically, such as with sudden or delayed acceleration, the vehicles may be unsafe to drive.  All of the car and truck models implicated by this suit were made by defendant General Motors.  The plaintiffs filed suit on behalf of putative classes, including the owners of thousands of vehicles that, they claim, have defective transmissions, which GM has refused to fix or replace under its express warranty.

In their complaint, which spans 348 pages, the plaintiffs echo the causes of action pleaded in *Speerly*, which sound in breaches of express and implied warranties; common law fraudulent omissions and statutory consumer fraud; violations of various state laws governing consumer sales, deceptive marketing, and unfair trade practices; and unjust enrichment under the laws of 30 states. Classes were proposed for certification consisting of domestic buyers and lessors of GM cars and trucks equipped with its Hydra-Matic 8L90 and 8L45 transmissions.  The class vehicles include the 2015 through 2019 model year Chevrolet Silverado; 2017-2019 Chevrolet Colorado; 2015-2019 Chevrolet Corvette; 2016-2019 Chevrolet Camaro; 2015-2019 Cadillac Escalade and Escalade ESV; 2016-2019 Cadillac ATS, ATS-V, CTS, CT6, and CTS-V; 2015-2019 GMC Sierra, Yukon, Yukon XL, and Yukon Denali XL; and 2017-2019 GMC Canyon.

In *Speerly*, the Court granted in part the plaintiffs' motion for class certification in a ruling issued on March 20, 2023, and that ruling was affirmed on appeal, although the defendant's petition for rehearing *en banc* was granted.  *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493 (E.D. Mich. 2023), *aff'd*, 115 F.4th 680, *pet for reh'g en banc granted*, 123 F.4th 840 (6th Cir. 2024).

The plaintiffs in this matter allege that the 8L45 and 8L90 transmissions share a common design except for certain components that vary in inconsequential respects between different

vehicles.  They further allege that the class transmissions have at least two common defects: (1) a defective Automatic Transmission Fluid (ATF), which lacks "robustness to moisture," and fails to "maintain a positive friction curve over time," leading to "shudder" problems, and (2) an "inability to purge trapped air due to an insufficient valve body architecture," which causes problems with "harsh shifts."  The "harsh shifts" were categorized in GM documents summarizing customer complaints as "harsh garage shifts" (e.g., "after shifting into gear in the morning, there is a delay and then a harsh shift"); "first shift of the day" issues, (e.g., "pulling out of my driveway I feel a bump on the first shift at 5 mph"); and "rough coast downs" (e.g., "coming to a stop it feels like I was rear-ended").

The plaintiffs allege that GM developed a different ATF formulation known as "Mod1a," which was deployed in March 2019.  However, GM chose only to replace the ATF in class vehicles that then remained unsold on dealer lots, and it elected not to deploy the new Mod1a formula to all previously sold class vehicles.  The plaintiffs say that the new formula cures "shudder" issues, but it has not been made available by GM to class vehicle owners who bought their cars before March 1, 2019.  The plaintiffs also allege that GM developed various hardware and software refinements to address the "harsh shift" problems, but GM internal correspondence reveals the defendant's conclusion that "[u]ltimately, some of the issues could not be resolved without a major redesign of the transmission, which was approved in early 2018 (8RWD Gen2)."  The "Gen2" design improvements were slated by GM for deployment only in Model Year 2023 and later vehicles, and those improvements were not deployed for class vehicles.  Further correspondence reveals that GM considered retrofit packages to bring the Gen 2 improvements to class vehicles, with associated costs of $1,550 for valve body replacement and $4,450 for transmission

replacement in each class vehicle.  However, GM decided not to proceed with offering those fixes due to the cost to deploy fixes to all class vehicles.

The *Speerly* complaint under the leading file number 19-11044 was filed on April 10, 2019. On September 16, 2019, the Court consolidated several related cases with *Speerly* and established initial deadlines for filing and challenging consolidated pleadings.  The consolidated amended class action complaint was filed on September 30, 2019.  On November 30, 2020, the Court granted in part the defendant's first motion to dismiss and dismissed a limited slate of claims, while allowing most of the pleaded causes to proceed.  On June 10, 2021, after several rounds of agreed partial dismissals and the filing of two addendums to the complaint to add new plaintiffs, the Court granted a second motion to dismiss and dismissed certain claims by one surviving plaintiff.  On December 16, 2021, the Court granted a motion by the plaintiffs to file a second addendum adding one more plaintiff.  After the discovery period relating to class certification issues closed, the plaintiffs filed their class certification motion.  The parties also filed motions challenging six of their respective experts. Those motions were denied in the Court's opinion issued July 28, 2022. The motion for class certification was granted on March 20, 2023.

On March 21, 2023, the Court granted the defendant's motion to compel arbitration in a separate matter where Cole Ulrich initially had brought his claims.  *Harper v. Gen. Motors, LLC*, No. 21-12907, 2023 WL 2586298, at *4 (E.D. Mich. Mar. 21, 2023).  Ulrich proceeded to arbitration, and after receiving a ruling by an arbitrator that his claims were not subject to arbitration, he returned to proceed with the claims in this case.  He was joined by 12 newly named plaintiffs who were not previously participants in the *Speerly* consolidated matters.  Altogether, this new case involves claims by 13 plaintiffs from 10 states:

- Cole Ulrich (CA)
- Sean Joseph Zimmett (CT)

- Daniel and Lynn Davis (IA)
- Jacob and Britney Brellenthin (IN)
- Paul Aiello (MA)
- Dale Bland, Ryan Volmert (MO)
- Duane Egge (ND)
- Kenneth James Wilkinson (OR)
- Paul Northup (RI)
- Angela Bailey (SD)

The plaintiffs have pleaded a similar slate of causes of action sounding in fraud, unjust enrichment, and breaches of express and implied warranties based on the same background facts alleged in *Speerly*. The complaint in this case was filed on April 17, 2024, around a year after the Court's class certification decision in *Speerly*. The defendant timely filed its motions to dismiss. The parties presented their arguments in open court on December 19, 2024.

## II.

GM argues that the plaintiffs have not made allegations in their complaint sufficient to state a claim for relief. GM invokes Federal Rule of Civil Procedure 12(b)(6). When evaluating a motion under that rule, the Court is called upon to determine if the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)). If those extra-complaint materials are to be considered, the Court must convert the motion to a motion for summary judgment under Rule 56 and allow all parties to present evidence, which usually means that an opportunity to conduct discovery should be given. *Id.* at 643 (citing Fed. R. Civ. P. 12(d)).

## A.

Notably, the plaintiffs do not oppose several of the defendant's arguments for dismissal. First, the defendant argues that the common law unjust enrichment and fraudulent omission claims (Counts 2 and 3) were pleaded in gross and do not reference causes of action under the common law of any specific jurisdiction. The plaintiffs do not oppose this argument and consent to the dismissal of those counts, but they request leave to file an amended complaint repleading the causes of action on a state-by-state basis.

Second, the defendant argues that no viable claim for fraudulent omission may be pleaded under Massachusetts law, because the plaintiffs cannot allege facts sufficient to establish that the defendant had a duty to disclose information about the defect, which is fatal to the cause of action in that jurisdiction. The plaintiffs do not oppose this argument and represent that they do not intend to replead any such claim.

Third, the plaintiffs' consent to the dismissal of the statutory consumer protection claim under Oregon law (Count 24) on the ground that it is time barred.

B.

The defendant argues that several claims are time-barred. Those include (1) the implied warranty claims under the laws of Indiana (Count 14), Massachusetts (Count 16), Missouri (Count 19), North Dakota (Count 22), Oregon (Count 25), and Rhode Island (Count 28); (2) the express warranty claims under the laws of Connecticut (Count 9), Indiana (Count 13), Massachusetts (Count 17), North Dakota (Count 23), Oregon (Count 26), and Rhode Island (Count 29); (3) the statutory consumer protection claims under the laws of Connecticut (Count 8), Iowa (Count 10), Massachusetts (Count 15), North Dakota (Count 21), and Rhode Island (Count 27); (4) any common law fraudulent omission claims pleaded (or repleaded) under the laws of Massachusetts, Connecticut, and Oregon; and (5) any unjust enrichment claim under Massachusetts law. The plaintiffs do not concede this argument. Instead, they insist that they need not plead facts to defeat affirmative defenses such as the statute of limitations, and fact questions exist about whether the application of the discovery rule or doctrines concerning concealment and estoppel may rescue any purportedly untimely claims, and they say that they pleaded sufficient facts to invoke those saving principles.

- 7 -

In prior rulings, including in *Speerly*, this Court repeatedly has rejected arguments for dismissal of product defect claims at the pleading stage based on purported untimeliness, on the ground that adjudication of the limitations defense at the pleading stage is inappropriate both because avoidance of affirmative defenses need not be pleaded at the outset, and because the facts produced during discovery could support various exceptions to the defense. *Francis*, 504 F. Supp. 3d at 691 (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim."); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-02744, 2018 WL 4352702, at *7 (E.D. Mich. Sept. 12, 2018)).  The same rationale applies here, and the defendant's arguments for dismissal based on its assertion of statutes of limitations defenses will be rejected.

## C.

GM next argues that the express and implied warranty claims under the laws of Iowa (Counts 11-12), Indiana (Count 13-14), South Dakota (Count 22-23), and North Dakota (Counts 31-32) must be dismissed because the plaintiffs from those states failed adequately to plead the breach of any implied or express warranty.

The Court previously addressed this issue in the companion case and found that the pleaded facts adequately suggest that the class vehicles were not fit for the ordinary purpose of providing reasonably safe transportation, which is the prevailing standard for assessing merchantability of automobiles under the law of every jurisdiction surveyed.  *See Francis*, 504 F. Supp. 3d at 676 ("Federal courts considering implied warranty claims in auto defect litigation consistently have held that an automobile is merchantable or fit for its intended purpose only where it is able reliably to operate in a 'safe condition' or to provide 'safe transportation.' . . . . The allegations of the

- 8 -

CACAC here include reports of numerous dangerous incidents where drivers lost control of class vehicles and struck or nearly collided with other cars, objects, or pedestrians, or had harrowing near-miss incidents with oncoming or overtaking traffic due to abrupt, unpredictable, and uncontrollable acceleration or deceleration caused by the transmissions' failure to engage or maintain appropriate drive gear settings. Those numerous incident reports support the concerns stated by all of the individual plaintiffs that similar gearing issues experienced in their own vehicles have caused them to be worried for their safety while driving the cars. Those pleaded facts taken together suffice to support an inference that the class vehicles were not fit for the intended purpose of providing safe and reliable transportation on public roadways.") (collecting cases). The allegations of the complaint in the present matter mirror those on the consolidated pleading that governs *Speerly*. GM's arguments for dismissal of the implied warranty claims will be rejected based on the rationale of the Court's earlier ruling.

The Court also previously considered and rejected the defendant's challenge to the adequacy of the plaintiffs' pleading of express warranty claims. *Francis*, 504 F. Supp. 3d at 672-74. Furthermore, in its opinion on the plaintiffs' class certification motion in *Speerly*, the Court propounded an exhaustive review of the common, class-wide proofs marshaled by the plaintiffs suggesting the existence of a "defect" that causes the vehicles to fall short of performing their ordinary use of providing reasonably safe transportation, and which suffices to demonstrate that they have a "defect" within the scope of the defendant's express warranty. *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 512-18 (6th Cir. 2024). The same allegations previously reviewed by the Court in extensive detail compel the conclusion that the warranty claims in this action based on the same facts have been pleaded plausibly.

D.

GM also argues that the implied warranty claims under the laws of Connecticut (Count 9), Oregon (Count 26), and Rhode Island (Count 28) must be dismissed because the plaintiffs from those states did not plead privity with the defendant.  The plaintiffs counter that they need not plead privity with the defendant to state viable warranty claims under the law of those states because they qualify as third-party beneficiaries of the Limited Warranty issued by the defendant, Rhode Island has codified a broad exception to privity extending a limited warranty issued by a manufacturer "to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty," R.I. Gen. Laws § 6A-2-318, and Oregon recognizes an exception to the privity doctrine where a product is purchased from the manufacturer's authorized dealer.

The laws of Connecticut and Oregon establish exceptions to the privity requirement that apply to the warranty claims.  Other decisions on point hold the same under Rhode Island law.

"Connecticut recognizes an exception to the privity requirement where an agency relationship exists between the manufacturer and its dealership," and "[t]his exception calls for a fact-intensive inquiry that cannot be resolved in a principled manner at the pleading stage."  *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 706 F. Supp. 3d 746, 778-79 (E.D. Mich. 2023) (citing *Napoli-Bosse v. Gen. Motors LLC*, No. 18-1720, 2022 WL 3585769, at *7 (D. Conn. Aug. 22, 2022); *Kahn v. Volkswagen of Am., Inc.*, 45 Conn. L. Rptr. 31, 2008 WL 590469, at *8 (Super. Ct. Feb. 13, 2008); *Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 543, 893 A.2d 389, 400 (2006)).  Dismissal of the Connecticut warranty claim is not appropriate.

"Oregon recognizes an exception to the privity requirement where a product is purchased from the defendant's authorized dealer."  *Chrysler Pacifica Fire Recall Litig.*, 706 F. Supp. 3d at

779 (citing *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 981 (E.D. Mich. 2022);
*Crawford v. FCA US LLC*, 2021 WL 3603342 at *7 (E.D. Mich. Aug. 13, 2021); *Torch v. Windsor
Surry Co.*, 2019 WL 6709379, at *11 n.5 (D. Or. Dec. 9, 2019)).

Rhode Island broadly abrogated the requirement of privity by statutory enactment through
Rhode Island General Laws § 6A-2-318, which provides that "[a]seller's or a manufacturer's or a
packer's warranty, whether express or implied, including but not limited to a warranty of
merchantability provided for in § 6A-2-314, extends to any person who may reasonably be
expected to use, consume, or be affected by the goods and who is injured by breach of the
warranty."  The ultimate purchasers of the class vehicles certainly would be "reasonably []
expected to use" those vehicles, and Rhode Island courts have observed that "[t]he underlying
purpose of [section 6A-2-318 is] to give a class of third-party beneficiaries the benefits of the same
warranties that a buyer theretofore had received in a contract of sale and thereby to free those
beneficiaries from any technical rules of 'privity.'"  *Kelly v. Ford Motor Co.*, 110 R.I. 83, 88, 290
A.2d 607, 610 (1972); *see also Powers v. Lycoming Engines*, 272 F.R.D. 414, 420, n.12 (E.D. Pa.
2011) ("Thirty-one states, including [Rhode Island], do not require privity of contract to recover
for breach of the implied warranty of merchantability where only economic damages are
involved.")).

The prevailing case law in the jurisdictions in question does not support dismissal of the
warranty claims for lack of privity.

E.

The defendant argues that the express warranty claim under Connecticut law (Count 9)
must be dismissed because the Limited Warranty providing for a repair-or-replace remedy does
not support a viable claim under U.C.C. § 2-313.  However, as other district courts in this circuit

have recognized, there is a divergence of authority among state courts on the question whether a "repair-or-replace" warranty qualifies as a express warranty governed by U.C.C. § 2-313.  *See Grundy v. FCA US LLC*, No. 20-11231, 2023 WL 3669348, at *2 (E.D. Mich. May 25, 2023).

The defendant cites the decision of a Connecticut district court that predicted the Connecticut Supreme Court, which has not squarely addressed the issue, would join those states holding that a repair-or-replace warranty does not qualify as an express warranty under U.C.C. § 2-313.  *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 546 (D. Conn. 2020) (analogizing based on the reasoning of *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 244 Conn. 126, 150, 709 A.2d 1075, 1086 (2013)).  However, the Sixth Circuit reached a contrary result when it predicted that Michigan courts would hold that a repair-or-replace warranty is an express warranty subject to Michigan's codification of U.C.C. § 2-313, which is identical to Connecticut's enactment.  *See Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) ("This [statute] does not limit the extension of express warranties to direct sellers, and the [Michigan UCC] definition of a seller — one 'who sells or contracts to sell goods' — does not indicate that a seller is restricted to one who directly sells goods to the consumer. Moreover, Damon refers to its warranty as an 'EXPRESS WRITTEN LIMITED WARRANTY.' Given this, the warranty likely formed part of the basis of the bargain, and thus it qualifies as an express warranty.").  The statutory texts are substantively identical.  *Compare* Mich. Comp. Laws § 440.2313(1)(a) ("An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."); *with* Conn. Gen. Stat. § 42a-2-313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").

The available authority is sparse and not uniform, but the Sixth Circuit's reasoning in *Pack* is more persuasive since there the court of appeals directly construed the language of U.C.C. § 2-313 and held in a straightforward manner that a promise to repair or replace a defective product, particularly when made in the guise of an "express written limited warranty," qualifies as a promise relating to the goods sold and a component of the bargained sale.

In contrast, the holding in *Napoli-Bosse*, on which the defendant relies, is less persuasive because there the district court extrapolated from the reasoning of a case that did not construe U.C.C. § 2-313 at all, but which instead considered an alleged warranty of future performance under U.C.C. § 2-275.  *See* Conn. Gen. Stat. § 42a-2-725(2) ("A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.").  But the court in *Flagg* did not consider the scope of U.C.C. § 2-313, and instead merely held that "the repair or replacement clause contains no terms that, as a matter of law, would constitute an explicit warranty of future performance, as § 42a-2-725(2) requires," concluding that "[i]n the event of defects in the engines, the clause describes no more than a contractual commitment by the defendant, for a limited period of time, to provide remedies additional to those provided by article 2 of the Uniform Commercial Code."  *Flagg*, 244 Conn. at 150, 709 A.2d at 1086.

Contrary to the *Napoli-Bosse* court's conclusion, the *Flagg* court's analysis offers no guidance on the question whether a repair-or-replace limited warranty supports a viable cause of action under U.C.C. Article § 2-313, because interpretation of that express warranty provision of U.C.C. was not at issue in *Flagg*.  The *Napoli* court's extrapolation from that inapposite precedent is speculative and ungrounded, and the reasoning of the *Pack* decision is more pointed and

persuasive.  The balance of authority weighs against dismissal of the plaintiff's warranty claim under Connecticut law on the grounds urged by the defendant.

F.

GM argues that the Magnuson-Moss Warranty Act claims brought by the plaintiffs from Connecticut, Indiana, Iowa, Massachusetts, North Dakota, Oregon, Rhode Island, and South Dakota all must be dismissed because the plaintiffs failed to plead plausible warranty claims under state law, for the reasons detailed above.  However, for the reasons discussed above, the state law warranty claims remain viable, so the Magnuson-Moss Warranty Act claim also is viable.

G.

The defendant contends that the statutory consumer fraud claim under North Dakota law (Count 21) must be dismissed because the plaintiff there did not adequately allege any omission or misrepresentation made to him in connection with his vehicle purchase.  The plaintiffs respond that GM mischaracterizes North Dakota's consumer protection statute, which does not require the pleading of specific representations made to an individual buyer, as long as a plaintiff pleads that the defendant made representations "with the intent that others rely thereon in connection with the sale or advertisement of any merchandise," regardless of whether any particular buyer actually was deceived.

The plaintiffs have the better argument.  In its ruling on the defendant's previous pleading challenge in *Speerly*, the Court discussed the allegations of fraud in extensive detail and concluded that the pleadings fully satisfied the requirements of Federal Rule of Civil Procedure 9(b) with respect to alleging the "who," "what," and "when" concerning the alleged failure by the defendant to disclose its knowledge of the transmission defects to buyers of the class vehicles. *Francis*, 504 F. Supp. 3d at 682-85.  The same analysis requires the Court to reject the defendant's argument

- 14 -

here that the allegations of fraud are insufficient for failing to identify what was omitted or misrepresented when the plaintiff from North Dakota bought his vehicle. North Dakota plaintiff Duane Egge alleged in the complaint that he purchased a 2015 Chevrolet Corvette Stingray — equipped with an 8L90 or 8L45 transmission — from Gateway Chevrolet, in Fargo, North Dakota. He test drove the vehicle before buying it at the dealership, but neither he nor dealer had the same information about the transmission defects as GM. After the vehicle transmission exhibited hard shifting, and surging when driving on the highway, he brought the vehicle into Gateway Chevrolet in Fargo, North Dakota for service on at least two occasions, and GM's authorized dealership failed to adequately repair the vehicle. Egge alleged further that GM did not disclose the transmission defects in its advertising materials or on its websites, or to its dealers, and he says that had it done so, Egge would not have purchased the vehicle or paid the price he paid for it. Compl., ECF No. 1, PageID.179-80.

These allegations adequately state a claim under North Dakota's consumer fraud statute.

H.

Next, the defendant argues that no viable unjust enrichment claim can be pleaded (or repleaded) under Massachusetts law because an express agreement governs the transaction in dispute and an adequate remedy at law exists.

The Court previously confronted and rejected the same arguments for dismissal of unjust enrichment counts based on the availability of legal remedies and existence of an express contract in the form of the Limited Warranty, and those arguments will be rejected here based on the reasoning from the Court's prior ruling. *See Francis*, 504 F. Supp. 3d at 694 ("GM also argues that the plaintiffs cannot proceed on an unjust enrichment theory where they affirmatively plead the existence of an express contract (the limited warranty) governing the parties' relationships. But

alternative pleading of contract and quasi-contract claims routinely is permitted, and particularly is appropriate, where the defendant explicitly disclaims the availability of a contractual remedy, as it has done here by vigorously asserting its warranty coverage defense.  Finally, GM contends that the plaintiffs cannot proceed on an unjust enrichment theory where their consumer fraud and breach of warranty claims offer them an adequate remedy at law for any losses produced by the alleged defect. [But] unjust enrichment claims routinely are allowed to proceed when pleaded in the alternative to other viable claims for relief.") (citing *Solo v. UPS Co.*, 819 F.3d 788, 797 (6th Cir. 2016); collecting cases; cleaned up).

*I.*

Finally, the defendant argues that no viable fraudulent omission claim can be pleaded (or repleaded) under California law because such claims are barred by the economic loss rule.  The plaintiffs argue, correctly, that the California cases on point hold that the economic loss rule does not apply where a plaintiff alleges intentional fraud or concealment.

As this Court previously has recognized, "California's economic loss doctrine does not prevent tort recovery on claims where, as here, it is alleged that a plaintiff was induced fraudulently to enter into a sales transaction."  *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 706 F. Supp. 3d at 767 (citing *Driz v. FCA US, LLC*, No. 22-01605, 2022 WL 4348470, at *3 (N.D. Cal. Sept. 19, 2022) ("The California Supreme Court, however, has recognized certain contract cases where tort damages are nonetheless permitted, the most relevant of which are those 'where the contract was fraudulently induced.'" (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990, 102 P.3d 268, 273 (2004)))).  The fraud claims under California law are not precluded by the economic loss doctrine.

- 16 -

III.

The plaintiffs' consent to the dismissal of their common law unjust enrichment and fraudulent omission claims (Counts 2 and 3), which attempt to state claims based on a nationwide conglomeration of state laws.  They also agree that no viable claim for fraudulent omission may be pleaded under Massachusetts law, because the plaintiffs cannot allege facts sufficient to establish that the defendant had a duty to disclose information about the defect, which is fatal to the cause of action in that jurisdiction.  They also consent to the dismissal of the statutory consumer protection claim under Oregon law (Count 24) on the ground that it is time barred.  The complaint pleads viable claims in the remaining counts.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss (ECF No. 18) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Counts 1 and 2 of the complaint are **DISMISSED WITHOUT PREJUDICE** and Count 24 is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that if the plaintiffs want to file an amended complaint, they must do so **on or before March 18, 2025**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 25, 2025

- 17 -