UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH JAMES WILKINSON,

                    Plaintiff,

v.

GENERAL MOTORS, LLC,

                    Defendant.

_____/

Case Number 24-11007

Honorable David M. Lawson

## OPINION AND ORDER DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION

Kenneth Wilkinson is one of the several plaintiffs in this case who alleges that a vehicle he purchased that was manufactured by defendant General Motors was sold with a defective automatic transmission. The sales contract he signed with his dealer contained a provision that disputes arising from the transaction would be resolved by arbitration. By its terms, the arbitration clause applies to "dispute[s] between Purchaser and Dealer or any officer, employee or affiliate of Dealer." Defendant General Motors argues in a motion to compel arbitration that this language is broad enough to cover the present action brought against it as the manufacturer, even though GM was not a signatory to the agreement. But under the contract's plain terms, the manufacturer is neither a "Purchaser," a "Dealer," nor an "affiliate." GM therefore has no basis to enforce the arbitration clause for its own benefit. The motion to compel arbitration as to plaintiff Wilkinson will be denied.

I.

The facts of the case are familiar by now to the parties and were discussed at length in the Court's prior opinions on the defendant's pleading challenges to the amended class action complaint in the companion case, *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 667 (E.D.

Mich. 2020), the motions challenging the expert witnesses, *Won v. Gen. Motors, LLC*, No. 19-11044, 2022 WL 3010886, at *1 (E.D. Mich. July 28, 2022), and the motion to dismiss in the present matter, *Ulrich v. Gen. Motors, LLC*, No. 24-11007, 2025 WL 629460, 116 UCC Rep. Serv. 2d 332 (E.D. Mich. Feb. 25, 2025).  The plaintiffs allege that the automatic transmissions in their vehicles will "slip, buck, kick, jerk and harshly engage."  They say that, when the transmission causes the vehicle to perform erratically, such as with sudden or delayed acceleration, the vehicles may be unsafe to drive.  All of the car and truck models implicated by this suit were made by defendant General Motors.  The plaintiffs filed suit on behalf of putative classes, including the owners of thousands of vehicles that, they claim, have defective transmissions, which GM has refused to fix or replace under its express warranty.  The plaintiffs' claims are based on fraud, unjust enrichment, and breach of warranty theories.

In April 2019, plaintiff Kenneth Wilkinson bought a used 2018 Chevrolet Colorado from Kendall Chevrolet in Eugene, Oregon.  He executed a written Purchase Agreement for the sale. The agreement defined certain terms and conditions and incorporated an arbitration clause.  *See* Purchase Agreement, ECF No. 17-3, PageID.433.  In the Definitions section, the agreement states: "As used in this Vehicle Purchase Agreement (Agreement) (a) 'Dealer' means the dealer designated on the face of this Agreement. (b) 'Purchaser' means the party or parties who execute this Agreement as Purchaser. (c) 'Manufacturer' means the company that manufactured the Vehicle or any part thereof."  *Ibid.*  On the first page of the agreement, the Purchaser is identified as "Kenneth Wilkinson," and the Dealer is identified as "Kendall Chevrolet LLC."  The agreement incorporates "additional terms and conditions" which include, in Paragraph 10 of an addendum, a provision for "Mandatory Arbitration."  That provision states:

> Any claim, controversy, or dispute between Purchaser and Dealer or any officer, employee or affiliate of Dealer, arising out of or relating to this Agreement, the sale

> of or financing for, or the condition of the Vehicle . . . shall be resolved by arbitration in accordance with the then effective commercial arbitration rules of the Arbitration Service of Portland, Inc.

Purchase Agreement, Additional Terms and Conditions ¶ 10, ECF No. 17-3, PageID.433.  The agreement also conspicuously disclaims the issuance of any express or implied warranty by the Dealer covering the vehicle, stating:

> DEALER HAS NOT MADE ANY WARRANTY WITH RESPECT TO THIS VEHICLE OR RELATED GOODS OR SERVICES, unless Dealer delivers to Purchaser a separate written warranty. THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER IMPLIED WARRANTIES WITH RESPECT TO THE VEHICLE, GOODS OR SERVICES, unless Dealer delivers to Purchaser a separate written warranty or Purchaser has at the time of sale or within 90 days after the time of sale entered into a written service contract in connection with the sale of the Vehicle.

*Id.* at PageID.431.  It is undisputed that no other separate written warranty or service agreement was issued by the dealer in connection with Wilkinson's vehicle.

The parties agree that the dispute is governed by Oregon law, and for reasons discussed below, the Court agrees.  General Motors believes that it is entitled to enforce the arbitration clause because Oregon courts construe such clauses broadly, the clause by its terms covers any dispute "arising out of" the agreement and relating to "the condition of the vehicle," and the clause refers to disputes with any "affiliate" of the dealer, which GM says includes it as a manufacturer.  Failing that, GM says that it may invoke the doctrine of equitable estoppel to avail itself of the purchase contract's terms, including the right to compel arbitration.

Plaintiff Wilkinson also points to the plain terms of the arbitration clause, which, he says, undermine GM's arguments, as many courts applying Oregon law have found.  Likewise, he points to cases that reject the equitable estoppel argument.

The parties argued their motion last December, along with another plaintiff, Ryan Volmert, who also signed a dealer agreement with a differently-worded arbitration clause.  Volmert's

contract had an arbitration clause that included a provision that referred questions of arbitrability to the arbitrator.  Although Volmert contended that his arbitration clause would not include a non-signatory manufacturer like GM, he conceded that this question must be decided by the arbitrator. The Court stayed his case and referred it to arbitration.  The motion as to plaintiff Wilkinson has remained under advisement until now.

II.

The parties agree with the basic rules governing the enforceability of arbitration clauses. When such a clause is found in a contract, it is generally "'valid, irrevocable, and enforceable.'" *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 461 (6th Cir. 2024) (quoting 9 U.S.C. § 2).  Because the applicability of an arbitration provision is "'fundamental[ly] . . . a matter of contract,'" *ibid.* (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)), conventional contract interpretation law governs the question "whether their agreement covers a particular controversy,'" *ibid.* (quoting *Rent-A-Center*, 51 U.S. at 68-69 (cleaned up).

Basic to the law of contract formation are parties who come to a meeting of the minds and agree to be bound by their mutual promises.  *Homestyle Direct, LLC v. DHS*, 354 Or. 253, 262, 311 P.3d 487 (2013).  Focusing on agreements to arbitrate, which fall under the umbra of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, the Supreme Court emphasizes that "arbitration is strictly a matter of consent.'" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019); *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)) (cleaned up).  "Arbitration is 'a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration.'" *Coinbase*, 602 U.S. at 148 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).  "Consent is essential under the FAA because arbitrators wield only the authority they are given.  That is, they derive their 'powers

- 4 -

from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.'" *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)).   "Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?"  *Coinbase*, 602 U.S. at 148.

The contract language will determine who is bound by the promise to arbitrate.   "It is axiomatic that, '[t]ypically, only parties to a contract are bound to its terms.'"  *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 311-12 (6th Cir. 2024) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.")).   "But there are certainly exceptions, such as in agency, for third-party beneficiaries, or via equitable estoppel."  *Ibid.* (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.")).

These questions are all matters of contract interpretation, and there is a question of which body of law should control.  The Sixth Circuit has recognized that there is a circuit split on whether federal or state common law should be applied when construing contract terms governing arbitration.  *See Firexo*, 99 F.4th at 323.  But in *Firexo*, the court settled on the "stronger position [holding] that there is no federal common law of contract interpretation for arbitration clauses; [and] courts must use the *Erie* choice-of-law analysis — and the law dictated thereby — to determine whether an arbitration clause applies to a non-signatory."  *Id.* at 326 (citing *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520-25 (6th Cir. 2021)).  "Under the *Erie* approach to contract interpretation, a federal court sitting in diversity begins with a conflict-of-laws analysis using the

law of the State in which it sits . . . to determine the governing law, and then interprets the contract provision under that law." *Id.* at 327.

Following *Firexo*'s guidance, the parties agree that Oregon law governs the construction of the arbitration clause in Wilkinson's dealer purchase agreement. "Oregon courts follow a three-step inquiry for interpreting a contract." *Jurj v. Albers for Andersen*, No. 21-00088, 2024 WL 4187138, at *8 (D. Or. Sept. 13, 2024) (citing *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997)). That analysis begins — and often ends — with the first step, in which "the court must determine whether the disputed provision is ambiguous, which is a question of law." *Ibid.* ("First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends.") (citing *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016)). "A provision is ambiguous 'if two or more plausible interpretations of that term withstand scrutiny, i.e., continue[] to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the contract and the broader context of the contract as a whole.'" *Ibid.* (quoting *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 470, 836 P.2d 703, 706 (1992)). "The court must, if possible, construe the contract in a way that gives effect to all of its provisions, and is 'not to insert what has been omitted, or to omit what has been inserted.'" *Ibid.* (quoting *Ross Dress for Less*, 210 F. Supp. 3d at 1263). "If the provision is clear and unambiguous, the court applies the contractual term to the facts." *Ibid.*

Consistently with the foundational principles of Oregon's law of contracts, "in Oregon, the Court determines whether unnamed third-part[ies] . . . can invoke an arbitration clause." *Big Wuf Enters., LLC, v. Go Farm Hemp, LLC*, No. 20-01634, 2021 WL 12319108, at *2 (D. Or. July 12, 2021) (citing *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 149, 227 P.3d 796, 804

(2010)); *see also Eugene Water & Elec. Bd. v. MWH Americas, Inc.*, 293 Or. App. 41, 57-58, 426 P.3d 142, 151 (2018) ("Defendants point out that the arbitration provision states that it applies to 'any' dispute under the contract, which they contend extends to disputes . . . involving nonparties. . . . But, . . . the provision also states that it applies to any dispute *between the parties*. The question remains: Who are 'the parties'?").

To start, the parties agree as a threshold matter that Wilkinson's agreement does not contain a delegation provision, so the question of arbitrability is for the Court and not an arbitrator to decide. *Harrison v. Gen. Motors LLC*, 651 F. Supp. 3d 878, 889 (E.D. Mich. 2023).

Next, looking to the arbitration agreement, the language is not ambiguous. It is clear and specific and states plainly that the parties agreed to submit to arbitration "[a]ny claim, controversy, or dispute *between Purchaser and Dealer or any officer, employee or affiliate of Dealer*, arising out of or relating to this Agreement, the sale of or financing for, or the condition of the Vehicle." Purchase Agreement, Terms and Conditions ¶ 10, ECF No. 17-3, PageID.433 (emphasis added). The contract defines the terms Purchaser and Dealer, and neither of those definitions can be read to include the defendant, which is identified separately as the Manufacturer of the vehicle. The contract makes no mention of submitting any dispute between Purchaser and Manufacturer to arbitration, and the agreement does not incorporate either by reference or otherwise the defendant's separate express Limited Warranty on which the plaintiff has sued. Moreover, the purchase agreement explicitly disclaims the issuance of any warranty, express or implied, by Dealer to Purchaser, further demonstrating that the parties did not contemplate an agreement to arbitrate claims arising from a separate warranty issued by the non-party Manufacturer. There is no other reasonable construction of the arbitration provision in the context of the entire agreement other

than that the parties intended to arbitrate only disputes that might arise between the parties to the contract itself, not including disputes involving non-signatories.

The defendant contends that it is covered by the undefined term "affiliate" used in the arbitration clause, even though the definitions in the contract explicitly identify the "Manufacturer" of the vehicle distinctly from the "Dealer." The agreement does not define the term "affiliate." That term is understood to mean: "A person or organization that is affiliated with a larger body; a member. Also: an associate of another person or organization; a fellow member of a larger body." Oxford Eng. Dict. (Rev. ed. 2012). No doubt that General Motors' upper management — not to mention its members and stockholders — would be surprised to learn that the international automaker was a junior member of Kendall Chevrolet in Eugene, Oregon. The term "affiliate" cannot be conscripted into the service GM envisions. And the defendant has not pointed to any traces elsewhere in the Dealer Agreement showing the parties' intent to include a distinctly nominated stranger to the contract under the general category of "affiliates" of the Dealer. GM says that the plaintiff has alleged that the defendant is an "affiliate" of the Dealer, but the complaint says no such thing, pleading merely that the defendant acts on its own and in concert with unspecified "affiliates" to design, make, and market the class vehicles. Compl. ¶ 28, ECF No. 1, PageID.14 ("General Motors LLC, itself and through its affiliates, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in Michigan."). That language might support an inference that the Dealer is an affiliate of the Manufacturer, but urging the opposite conclusion only attempts to fly that arrow backwards. The argument cannot take flight.

Moreover, the defendant's reading of the agreement as including it under the generalized rubric of "affiliates" would render superfluous the language in the definitions distinctly nominating

the defendant as the Manufacturer of the vehicle.  If the parties intended to include disputes against a Manufacturer within the scope of their arbitration agreement, then they certainly could have said so in their contract, but they did not.  The defendant would have the Court read into the contract an additional definition provision stating "'Affiliates' means entities . . . including Manufacturer", or an insertion to the arbitration clause enlarging its scope to cover disputes between "between Purchaser and Dealer or any officer, employee or affiliate of Dealer, *including Manufacturer*." Either construction is a bridge too far under Oregon law, which is emphatic on this topic, having enshrined by statute the venerable axiom that "[i]n the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted*."  Or. Stat. § 42.230 (emphasis added).  The plain terms of the writing do not suggest any intent by the parties to include the defendant in the undefined category of "affiliates," and the defendant has not presented any evidence that it has any "affiliate" relationship with the dealer that was within the contemplation of the parties when the purchase agreement was executed.

Confronting language equally specific and indistinguishable, Oregon courts readily have concluded that a third-party defendant is not entitled to compel arbitration under a contract to which it was not a party. *Eugene Water & Elec. Bd. v. MWH Americas, Inc.*, 293 Or. App. 41, 58-59, 426 P.3d 142, 151-52 (2018).  In that case, a subcontractor attempted to invoke an arbitration clause that "applie[d] to claims between 'Owner' and 'Contractor,' terms that [were] specifically defined in the contract."  *Id.* at 58, 426 P.3d at 151.  Rejecting that effort, the court found that "[t]he arbitration provision's use of the definite article, *the* parties, suggests a reference back to those parties previously named, the 'Owner' and 'Contractor,' who, as noted, are also described as the parties to the contract.  Based on the plain text of the contract . . ., we conclude that the

reference to 'the parties' in the arbitration provision is a reference to the parties to the contract previously named in the first sentence of the paragraph, the 'Owner' and the 'Contractor.'" *Ibid.*, 426 P.3d at 151-52.

Oregon courts also consistently have rejected attempts to inject supposed "ambiguity" into the plain terms of contracts, or to compel arbitration on broader principles, where the language of an agreement is clear and specific as to the scope of arbitrable disputes. *DeLashmutt v. Parker Grp. Invs., LLC*, 276 Or. App. 42, 47-48, 366 P.3d 769, 772-73 (2016). The *DeLashmutt* court held that an arbitration provision that bound "the Borrower and the Lender" could not be expanded to include disputes involving individuals who had signed a related investment agreement, rejecting the argument that the plain construction "exalts form over substance, and inconvenience over efficiency, for no discernible reason that would benefit either side or the enterprise." *Id.* at 47, 366 P.3d at 772. The court reasoned that "the presumption in favor of arbitration identified in [its prior] cases does not supplant the ordinary rules of contract interpretation. Rather, it applies only where an arbitration agreement is ambiguous and extrinsic evidence does not resolve the ambiguity. Here, an application of the ordinary rules of contract interpretation leads to the conclusion that the arbitration provision is unambiguous and, by its terms, applies only to disputes between [the contract signatories], and not to disputes involving other parties." *Id.* at 48, 366 P.3d at 772.

Applying similar principles and the law of other jurisdictions, federal courts have reached the same conclusion, finding that the plain language of the agreement controls. *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948 (9th Cir. 2022) (holding that "[t]he arbitration clause's enforcement provisions [in a similarly worded dealer agreement] are limited to the dealership, the assignee, and [the customer]. . . . [and] the fact that the purchase agreement provides that it 'does not affect any

warranties covering the vehicle that the vehicle manufacturer may provide,' is a potent indication that the parties knew how to deal with claims against the manufacturer.  Although the arbitration clause may have extended to claims regarding the purchase of the vehicle, it does not follow that additional *parties* can enforce the arbitration clause.").

The circumstances in those cases, as in the present case, are distinguishable from cases relied on by GM where less cabined terms were found to permit the possibility of third-party invocation of an arbitration clause, when a reference to disputes "arising out of or relating to" the agreement was not accompanied by any language limiting the scope to controversies "between the parties" to the contract.  *E.g.*, *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 150, 227 P.3d 796, 805 (2010).

Oregon courts also consistently have rejected attempts by non-parties to invoke arbitration clauses on the ground of equitable estoppel.  "To establish an affirmative defense of equitable estoppel or estoppel by conduct [under Oregon law], the defendant must show: (1) a false representation, (2) made with knowledge of the facts, and (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it."  *Goergen v. Black Rock Coffee Bar, LLC*, No. 22-1258, 2023 WL 1777980, at *9 (D. Or. Feb. 6, 2023) (citing *Ross Dress For Less, Inc. v. Makarios-Oregon, LLC*, 180 F. Supp. 3d 745, 778 (D. Or. 2016), *aff'd*, No. 21-35106, 2022 WL 2643376 (9th Cir. July 8, 2022)).  GM has not identified any false representation by plaintiff Wilkinson or any way in which it, as a stranger to the contract, conceivably could have been induced to act on such a representation.  Where a defendant has failed to make out the elements for estoppel, Oregon courts have rejected attempts by a contractual non-party to invoke that equitable principle to compel arbitration, and federal courts have followed suit

- 11 -

applying the law of various jurisdictions. *Goergen v. Black Rock Coffee Bar, LLC*, No. 22-1258, 2023 WL 1777980, at *10 (D. Or. Feb. 6, 2023) ("Black Rock additionally argues that equitable estoppel applies to the Trust because it 'knowingly exploited' the arbitration agreement. Black Rock does not cite any Oregon state case applying this type of equitable estoppel."); *id.* at *2 ("[T]he Court concludes that Plaintiffs, who are nonsignatories to the contracts between Black Rock and the BR Entities, are not bound by the arbitration agreement in those contracts and there is no valid contract between Plaintiffs and Black Rock requiring arbitration."); *see also Ngo*, 23 F.4th at 949 ("BMW is mistaken that, under the Song-Beverley and the Magnuson-Moss Warranty Acts, Ngo's claims are inextricably intertwined with terms of the purchase agreement. To be sure, Ngo must show that she owned a BMW, but ownership does not entail an intention to enforce any obligations of the purchase agreement on BMW. BMW was not a party to the agreement and its obligations to Ngo arose independently of her agreement with the dealership."); *Harrison v. Gen. Motors LLC*, 651 F. Supp. 3d 878, 889-92 (E.D. Mich. 2023) (rejecting application of estoppel to enforce arbitration clauses under Ohio, Tennessee, and Florida law).

By contrast, in those rare cases where a third party has been allowed to avail itself of an arbitration clause, it was because the plaintiff had sued both the manufacturer *and* the retail vendor of an allegedly defective product. *E.g.*, *Ngo*, 23 F.4th at 950 ("It makes a critical difference that the Felisildas, unlike Ngo, sued the dealership in addition to the manufacturer. In *Felisilda*, it was the dealership — a signatory to the purchase agreement — that moved to compel arbitration rather than the non-signatory manufacturer. Furthermore, the Felisildas dismissed the dealership only after the court granted the motion to compel arbitration. Accordingly, *Felisilda* does not address the situation we are confronted with here, where the non-signatory manufacturer attempted to compel arbitration on its own. We therefore decline to affirm on the ground of equitable

- 12 -

estoppel.") (distinguishing *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486, 266 Cal. Rptr. 3d 640 (2020)).  In this case, the plaintiff has not sued the dealer, nor has he pleaded any claim in his complaint for breach of the purchase agreement that incorporated the arbitration clause.  Instead, he seeks to recover for a breach of the entirely separate express Limited Warranty issued by the defendant, not the dealer.

III.

The language of the Dealer Agreement is unambiguous and plainly answers the inquiry whether plaintiff Wilkinson and the dealer that sold him his vehicle contemplated arbitration of disputes involving non-parties to the sale contract, including the manufacturer.  They did not.  Plaintiff Wilkinson did not agree to arbitrate any claims he may have against the manufacturer of the vehicle he purchased with the allegedly defective transmission.

Accordingly, it is **ORDERED** that the defendant's motion to compel plaintiff Wilkinson to submit his claims to arbitration (ECF No. 17) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:  June 13, 2025